IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN MICHAEL BRADBURY,

            Petitioner,

     v.

GUY HALL,

            Respondent.

Civil No. 06-1399-AC

FINDINGS AND RECOMMENDATION

THOMAS J. HESTER
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

       Attorney for Petitioner

JOHN R. KROGER
Attorney General
JACQUELINE SADKER
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

       Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

In June 1994, Petitioner was charged in Umatilla County Circuit Court with fourteen counts of Sexual Abuse in the First Degree and one count of Unlawful Sexual Penetration in the First Degree. The charges arose from complaints that Petitioner had sexually abused three of his daughters. Petitioner waived his right to a jury, and on August 15, 1994, the case was tried to the court. The judge convicted Petitioner on all charges. The sentencing court imposed a 339-month prison term, with 115 months of the term attributable to the Sexual Penetration in the First Degree conviction.

Petitioner filed a direct appeal, which was dismissed on his motion. Petitioner then sought state post-conviction relief ("PCR"). The procedural history of Petitioner's state PCR proceedings is long and convoluted. Given the recommended disposition of this action on the merits as discussed below, a lengthy description of the PCR proceedings is not necessary.

On October 2, 2006, Petitioner filed his habeas corpus action in this court. Petitioner challenges only the legality of the conviction for Unlawful Sexual Penetration in the First Degree. He claims his trial attorney provided constitutionally ineffective assistance because he failed to investigate the case beyond the discovery provided by the state and failed to adequately cross examine the state's witnesses.

2 - FINDINGS AND RECOMMENDATION -

Respondent argues Petitioner's claim is procedurally defaulted and that, in any event, Petitioner is not entitled to relief on the merits. Petitioner contends cause and prejudice excuse his procedural default or, in the alternative, that his habeas claim should be decided on the merits because he is actually innocent of the sexual penetration charge.

Respondent's procedural default argument may be valid. However, as explained below, Petitioner is not entitled to relief on the merits of his claim. Accordingly, the Court need not reach the procedural default issue.[1] *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ; *see also DaSilva v. Green*, 2011 WL 2581288 * 2 (D. Mont., June 2, 2011) (rather than giving petitioner pointless opportunity to excuse procedural default, goal of reaching final resolution is advanced if court assumes petitioner might somehow find cause to excuse the default and address the claim on the merits, where claim has no merit) (citing *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); 28 U.S.C. § 2254(b)(2)).

## LEGAL STANDARDS

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Likewise, the Court need not consider Petitioner's request for an evidentiary hearing on the issue of procedural default.

3 - FINDINGS AND RECOMMENDATION -

A state court's determination of a factual issue "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id.*

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)), *cert. denied*, 546 U.S. 963 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 409. "Under § 2254(d), a habeas court must determine what arguments or theories supported, ... or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). This is "the only question that matters under § 2254(d)(1)." *Id.* (citation and internal quotations omitted). "As a condition for obtaining habeas

4 - FINDINGS AND RECOMMENDATION -

corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

In applying the foregoing standards, federal courts look to the last reasoned state court decision. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (citation and quotations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Gill v. Ayers*, 342 F.3d 911, 917 n. 5 (9th Cir. 2003) (federal courts "look through" unexplained rulings of higher state courts to the last reasoned decision).

## DISCUSSION

Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments. In order to prevail on his claim of ineffective assistance of counsel, Petitioner must show both (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Id.* at 689.

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.*; *see also Woodford v. Visciotti*, 537 U.S. 19, 22 (2002). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (noting that habeas review of ineffective assistance claim is "doubly deferential" taking into account the strong presumption of competence under *Strickland*, and the deferential standard of review under 28 U.S.C. § 2254(d)).

Petitioner contends his trial attorney failed to investigate the relationship between one of the victim's biological mother and the original investigating police officer, and that his trial attorney failed to subject the prosecution's witnesses to meaningful cross examination. According to Petitioner, had counsel undertaken such an investigation, he would have uncovered evidence that the victim was coached or influenced to testify to events which did not occur.

At trial, the victim testified to the following:

| | |
|---|---|
| PROSECUTOR: | Can you tell us about the bad touching that you said your father did? |
| VICTIM: | On several different occasions in my dad's bedroom he would put his finger in me and touch me. |
| PROSECUTOR: | Okay. Now, I want to be careful I don't assume things that you don't mean. When you say put his finger in you. I |

6 - FINDINGS AND RECOMMENDATION -

|  |  |
|---|---|
|  | know this isn't going to be easy to talk about can you tell us exactly what you mean by in you? |
| VICTIM: | He would have me take my pants off and put his finger in my vagina, in a hole. |
| PROSECUTOR: | And how often did this happen? |
| VICTIM: | Two or three times a week. |
| PROSECUTOR: | Two or three times a week? |
| VICTIM: | It happened quite often. |
|  | * * * |
| PROSECUTOR: | And the inserting of his finger into your vagina was that on a regular basis too? |
| VICTIM: | No. That happened. He would in, put his finger in me every time he, every time he did stuff. He did it a few of the times. |
| PROSECUTOR: | Okay. |
| VICTIM: | Maybe six, seven. I don't know. Just some of the times. |
| PROSECUTOR: | And other times he just touched? |
| VICTIM: | He touched me and named my parts and touched them. |

Transcript, Vol. 2, pp. 68-70.

Toni Morgan, a consultant for the Oregon Childrens Services Division, testified about statements the victim made to her in an interview on May 25, 1994, some three months before the trial occurred:

| PROSECUTOR: | Okay. Can you tell us about your interview with [the victim]? |
|---|---|

7 - FINDINGS AND RECOMMENDATION -

| | |
|---|---|
| MS. MORGAN: | Okay. At the request of the Pendleton office I got involved in this case and interviewed [the victim] with Detective Williamson in the Pendleton office. And. I, I had some knowledge that this was a case about sex abuse so I knew we were going to get them to talking about sex abuse and I knew this girl was about thirteen years old. |
| | So we met in the office and we spent some time getting acquainted and asking her if she was willing to talk to us about the things that, that we wanted to talk about. |
| | \* \* \* |
| PROSECUTOR: | Okay. In the course of your interview with her did she indicate that her father had touched her in some inappropriate way? |
| MS. MORGAN: | Yes. She indicated that when she was approximately in the third grade, she said eight or nine, her dad. What seemed to trigger his interest in her was her develop, her own developing and maturation process. And her memory is that he became really overly interested in her development and at that point began doing some really inappropriate touching and, in the form of. |
| | Not just talking about, but touching and showing and concluded by saying it got to the point where it was happening her words were once or twice or some times more often that he was touching her breasts, touching her vaginal area, putting his finger inside of her, telling her what the parts were. |

Transcript, Vol. 2, pp. 89-91. Ms. Morgan also indicated the victim had previously disclosed Petitioner's actions to another CSD employee and to police officers. Transcript, Vol. 2, pp. 88-89.

Petitioner testified on his own behalf. He admitted much of the inappropriate touching allegations, but denied putting his finger in the victim's vagina. Transcript, Vol. 2, pp. 140-41.

8 - FINDINGS AND RECOMMENDATION -

At the close of trial, the judge announced his decision as to Petitioner's guilt on all of the charges:

> THE COURT: ... I have carefully reviewed the testimony and exhibits in this case. As well as the applicable law. And after having done so it is my conclusion that the [Petitioner] is guilty on all counts charged in the information.
>
> I once heard an appellate judge say to an audience of trial judges that if a trial judge finds a defendant guilty say so and no more because explanations can cause problems on appeal. I've always felt that was good advise [sic], so I will not be lengthy in my explanation.
>
> I will say, however, that I found that all three victims in this case to be very credible in their testimony. And I was convinced beyond a reasonable doubt that the inappropriate and illegal sexual conduct charged in the information occurred and that it happened in this county.
>
> I further find that the [Petitioner] was less credible because much of the sexual conduct occurred when he was drinking heavily and his memory was therefore clouded. He did, however, admit to much of the improper conduct.
>
> It is my conclusion therefore that he's guilty as charged.

Transcript, Vol. 2, pp. 171-72.

In his state PCR proceeding, Petitioner alleged trial counsel provided constitutionally ineffective assistance in that he failed to fully investigate and prepare the case. In his deposition in the PCR proceeding, Petitioner explained the investigative failure by charging that the unlawful penetration charge was the result of a false claim by the victim. Petitioner charged that the victim had been influenced by her mother (Petitioner's ex-wife), who was romantically involved with the investigating deputy, and by his current wife (the victim's step-mother) who had been threatened

9 - FINDINGS AND RECOMMENDATION -

with further prosecution for custodial interference and who was being courted romantically by the initial CSD case-worker. Petitioner faulted his trial attorney for not calling either the original investigating police officer or the original CSD case-worker to testify to explore their influence over his current and ex-wives and over the victim.

Petitioner's trial attorney submitted an affidavit responding to Petitioner's charge of failure to investigate:

> 2.    . . . I began representing petitioner in June of 1994, concerning multiple counts of Sex Abuse in the First Degree, and Unlawful Sexual Penetration in the First Degree, with the victims being his daughters.
>
> 3.    Petitioner was incarcerated in the Umatilla County jail at that time, and during the two months prior to trial, I spent many hours researching the evidence and discussing my defense of the case with petitioner. I believe that I met with petitioner at least eight or nine times at the jail, and I also spoke with him numerous times over the telephone.

Resp. Exh. 112, pp. 1-2.

Other than his own deposition testimony about the alleged relationships between the victim's mother and the investigating officer and Petitioner's wife and the original CSD case-worker, Petitioner did not proffer any direct evidence establishing that these relationships existed and/or somehow influenced the victim's testimony. Petitioner argues that prior to entry of the PCR judgment the PCR court received a letter from the victim in which she stated that she "just said what [Petitioner's wife] told me you did, I couldn't remember you doing it, but I trusted her." Resp. Exh. 118, p. 4. The context and credibility of this handwritten letter are unclear, however, and do not equate to an affidavit or other sworn statement showing the victim unequivocally wished to recant her testimony.

Petitioner also argues that the trial record contained indications suggesting that the victim's biological mother and the original investigating officer were exerting influence over the victim -- specifically, although he was originally scheduled to be the State's first witness the officer was never called to the witness stand; when cross-examined about her repeated discussion of the case with others, the victim disclosed that the last such discussion had been with the officer on the Friday or Saturday night preceding her testimony; and that the transcript showed that the victim's biological mother was in the hallway outside the courtroom during the trial. Again, however, this does not rise to the level of evidence that the officer pressured the victim's mother or the victim to falsely testify.

Following the evidentiary hearing, the PCR trial judge issued a Memorandum of Opinion concluding that Petitioner received constitutionally effective assistance of counsel because the case was adequately investigated. The trial judge subsequently issued Findings of Fact and Conclusions of law, which provided:

### FINDINGS OF FACT

1. Petitioner is incarcerated as the result of his convictions in Umatilla County for one count of first degree unlawful sex penetration and fourteen counts of first degree sex abuse. Petitioner had previously been convicted in Marion County for first degree sex abuse.

2. Finding petitioner guilty, the trial court stated:

    THE COURT: Be seated. I have carefully reviewed the testimony and exhibits in this case. As well as the applicable law. And after having done so it is my conclusion that the Defendant is guilty on all counts charged in the information.

* * *

11 - FINDINGS AND RECOMMENDATION -

> . . . I found that all three victims in this case to be very credible in their testimony. And I was convinced beyond a reasonable doubt that the inappropriate and illegal sexual conduct charged in the information occurred and that it happened in this county.
>
> I further find that the Defendant was less credible because much of the sexual contact occurred when he was drinking heavily and his memory was therefore clouded. He did however admit to much of the improper conduct.

3. During the two months prior to trial, trial counsel spent many hours researching the evidence and discussing the defense of the case with petitioner. Counsel met with petitioner at least eight or nine times at the county jail. Counsel also spoke with petitioner numerous times over the telephone.

* * *

## CONCLUSIONS OF LAW

1. In the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution or the Constitution of the State of Oregon.

2. Petitioner did not prove any of his claims by a preponderance of the evidence.

3. Petitioner's case was adequately investigated under constitutional standards.

Resp. Exh. 117, pp. 2-3.

The PCR trial judge's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. Petitioner failed to show that an investigation of the relationship between the victim's mother and the investigating officer would have revealed that the victim's testimony was false, or would have provided useful information to impeach her testimony. Likewise, he did not provide evidence that the CSD worker's relationship with his ex-wife actually influenced the victim's testimony. Other than his own deposition testimony,

12 - FINDINGS AND RECOMMENDATION -

Petitioner did not provide any evidence of what additional investigation would have uncovered or what testimony any additional witnesses would have provided. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (habeas petitioner's speculative testimony concerning what potential witnesses might have testified to was not evidence of the substance of that testimony).

Ultimately, for Petitioner to obtain habeas relief, the state PCR court's decision "must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotations omitted). "The state court's application [of federal law] must have been 'objectively unreasonable.'" *Id.* at 520-21 (internal quotations omitted). Taking the facts in the record as a whole, Petitioner has not demonstrated that trial counsel's representation was objectively unreasonable or that he suffered prejudice as a result thereof. Petitioner has not demonstrated that had counsel undertaken the additional investigation, there is a reasonable probability that the result of the proceeding would have been different. Accordingly, the PCR court's conclusion that trial counsel did not render ineffective assistance of counsel is not contrary to, or an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED and judgment of DISMISSAL should be entered.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due September 2, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

13 - FINDINGS AND RECOMMENDATION -

A party may respond to another party's objections within 14 days after filing of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 18th day of August, 2011.

John V. Acosta
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION -     F:\Share\Acosta\06-1399bradbury0818f&r.wpd